IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Wiley Y. Daniel**

Civil Action No.   11-cv-01445-WYD

LISA M. GILL,

    Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

    Defendant.

---

**ORDER**

---

THIS MATTER is before the Court on review of the Commissioner's decision that denied Plaintiff's claim for disability insurance benefits ["DIB"] and supplemental security income ["SSI"].  For the reasons stated below, this case is reversed and remanded for further fact finding.

I.    INTRODUCTION AND BACKGROUND

On July 25, 2007, Plaintiff protectively filed applications for DIB and SSI under Titles II and XVI of the Social Security Act ["the Act"], 42 U.S.C. §§ 401-33, 1381-1383c. (Transcript ["Tr."] 81, 190-96.)  Plaintiff alleged disability beginning December 28, 2006, due to major depressive disorder.  (*Id.* 190, 219.)  Born in 1962, Plaintiff was 44 years old at that time.  She has a GED (*id.* 224), and past relevant work as a housekeeping cleaner, kitchen helper, nurse assistant, and cashier.  (*Id.* 68).

Plaintiff's claim was denied at the initial determination stage. (Tr. 86-89.). A request for a hearing was made, and a hearing was held by an administrative law judge ["ALJ"] on December 18, 2009. (*Id.* 30-78.) Plaintiff testified at the hearing that she is unable to work because of depression, panic attacks, difficulty being around other people, and increasing pain and weakness. (*Id.* 43.) She also testified that after her son went missing and later was found dead, she stopped working because she was crying all the time and missed work up to ten days a month. (*Id.* 47-48). Further, she testified that she experiences panic attacks when she is around crowds of people. (*Id.* 44.) She also has flashbacks two to three times a week of when her son went missing, after which she cries for the remainder of the day. (*Id.* 57-58.)

Testimony was also presented that Plaintiff suffers from back pain in the middle of her shoulder blades and in her shoulders and legs (Tr. 58-59, 62), and lies down three to four hours a day due to her pain. (*Id.* 61). Two to three days a week, Plaintiff stated that she lays in bed all day after her granddaughter goes to school. (*Id.* 50). She sleeps only three to five hours a night because of racing thoughts and nightmares. (*Id.* 51-52).

The ALJ issued a decision on January 20, 2010, in which she concluded that Plaintiff was not disabled. (Tr. 13-29.) Specifically, the ALJ determined at step one that Plaintiff had not engaged in substantial gainful activity since her December 28, 2006 alleged onset date. (*Id.* 15, Finding 2.) At step two, she determined that Plaintiff had severe impairments including back problems, mild major depression, and bereavement

(*id.*, Finding 3), but that Plaintiff's impairments did not meet or equal a per se disabling impairment listed in 20 C.F.R. pt. 404, subpt. P, app. 1.  (*Id.* 16, Finding 4.)

The ALJ then assessed Plaintiff's residual functional capacity ["RFC"].  (Tr. 18, Finding 5).  From a physical perspective, the ALJ found that Plaintiff has the RFC to perform less than a full range of light work with the following additional restrictions:  she is limited to frequent, but not constant, repetitive reaching in all directions, including overhead lifting, she must avoid climbing of ladders and scaffolds, and she must avoid concentrated exposure to vibration.

From a mental perspective, the ALJ found Plaintiff was mildly restricted (10% limited in overall functioning) in the following areas:

- the ability to understand and remember detailed instructions;
- the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; and
- the ability to complete a normal workday and work week without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods.

(Tr. 18).  The ALJ found Plaintiff moderately restricted in the following areas:

- the ability to carry out detailed instructions;
- the ability to maintain attention and concentration for extended periods;
- the ability to work in coordination with or proximity to others without being distracted by them;
- the ability to accept instructions and respond appropriately to criticism from supervisors;
- the ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes; and
- the ability to respond appropriately to changes in the work setting.

(*Id.* 18).

As to credibility, the ALJ noted contradictions in the record and found that Plaintiff's "activities of daily living are entirely inconsistent with an individual who is alleging disability." (Tr. 21.)  In addition to being able to cook simple meals, wash dishes, do laundry and vacuum, shop for groceries, pay her bills and attend her doctor's appointments, the ALJ noted that Plaintiff "is the primary caretaker of her granddaughter, getting up with her in the morning and getting her off to school. (*Id.*) The ALJ also noted that for a period of time the Plaintiff cared for her common-law husband's eleven year-old daughter. (*Id.*)

At step four, the vocational expert ["VE"] testified that an individual of Plaintiff's age, education, work history and RFC could perform Plaintiff's past work as a housekeeping cleaner and cashier.  (Tr. 68-69.)  She could also perform other work as an office helper, mail clerk, and a production assembler.  (*Id.* 69-70.)  The VE stated that these jobs allowed the individual to be absent no more than one to two days a month.  (*Id.* 73.)  Based on the VE's testimony, the ALJ found that Plaintiff was capable of performing her past relevant work and other work that existed in significant numbers in the national economy.  (*Id.* 26, Finding 6.)  As a result, the ALJ concluded that Plaintiff was not disabled under the Act.  (*Id.* 28, Finding 7.)

Plaintiff requested review of the ALJ's decision by the Appeals Council on February 8, 2010.  (Tr. 9.)  On April 12, 2011, the Appeals Council denied the request for review.  (Tr. 1-4.)  This was the final act of the Commissioner, and this Court has jurisdiction to review Plaintiff's appeal pursuant to 42 U.S.C. § 405(g).

Plaintiff alleges that the ALJ erred because she (1) discounted the opinions of treating providers William Philip, M.D., and Peggy Jean Sammons, LPC, instead giving greater weight to testifying medical expert Ronald Houston, Ph.D., (2) discounted Plaintiff's subjective complaints, and (3) relied on flawed vocational expert testimony. Defendant maintains in response that substantial evidence of record supports the ALJ's decision.

II.   ANALYSIS

  A.   Standard of Review

A Court's review of the determination that a claimant is not disabled is limited to determining whether the Commissioner applied the correct legal standard and whether the decision is supported by substantial evidence. *Hamilton v. Sec. of Health and Human Servs.*, 961 F.2d 1495, 1497-98 (10th Cir. 1992). Substantial evidence is evidence a reasonable mind would accept as adequate to support a conclusion. *Brown v. Sullivan*, 912 F.2d 1194, 1196 (10th Cir. 1990). "It requires more than a scintilla of evidence but less than a preponderance of the evidence." *Gossett v. Bowen*, 862 F.2d 802, 804 (10th Cir. 1988).

"Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). Further, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

B.     Whether Reversal of the ALJ's Decision is Appropriate

1.     Whether the ALJ Erred in Connection with the Medical Evidence

The ALJ found that Plaintiff "has had little treatment or evaluation from treating providers that are considered 'acceptable medical sources." (Tr. 23-24). As to Dr. Philip specifically, the ALJ stated that "the record, which counsel stipulated was complete, reflects no treatment notes from Dr. Philip" and that "it is unclear whether Dr. Philip has ever seen or evaluated the claimant and, if so, what that evaluation showed." (*Id.* 23.) She then appeared to completely discount Dr. Philip's opinion in the record, without ever specifically resolving the issue of whether he was a treating physician. I agree with Plaintiff that this is reversible error.

The ALJ must determine who the treating physicians are in order to apply the treating physician rule to their opinions. *See Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011). That rule requires that the ALJ "complete a sequential two-step inquiry, each step of which is analytically distinct." The initial determination the ALJ must make is whether a treating physician's medical opinion is "conclusive, i.e., is to be accorded 'controlling weight,' on the matter to which it relates." *Id.* "Such an opinion must be given controlling weight if it is well-supported by medically acceptable clinical or laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record." *Id.* "Even if a treating opinion is not given controlling weight, it is still entitled to deference; at the second step in the analysis, the ALJ must make clear how much weight the opinion is being given (including whether it is being rejected outright) and give good reasons, tied to the factors specified in the cited regulations for this

particular purpose, for the weight assigned." *Id.* "If this is not done, a remand is required." *Id.*

The Commissioner argues that the ALJ reasonably concluded that there is no evidence that Dr. Philip was a treating physician because there was no evidence Plaintiff had seen the doctor at all, let alone "a number of times and long enough to have obtained a longitudinal picture of [the claimant's] impairment." (Def.'s Resp. Br. at 13) (citing *Doyal v. Barnhart*, 331 F.3d 758, 763 (10th Cir. 2003)). I reject this argument. The record shows that Dr. Philip first saw Plaintiff in July 2009, and that he saw her monthly through at least October 2009. (Tr. 421.) Further, the record contained opinions from Dr. Philip in September 2009 and November 2009 as to Plaintiff's mental impairments and its impact on Plaintiff's ability to work. (*Id.* 419, 421-428.) Indeed, Dr. Philip completed a detailed Psychiatric/ Psychological Impairment Questionnaire regarding his opinions, and provided findings to support his conclusions. (*Id.* 421-428.)

Based on the foregoing, the evidence in the record may well be enough to show that Dr. Philip saw Plaintiff "long enough to have obtained a longitudinal picture of [Plaintiff's] impairment." *Doyal*, 331 F.3d at 763. The ALJ erred by not properly developing and considering the issue of whether Dr. Philip was a treating physician. *See id.* (the ALJ must consider the relationship of both duration and frequency of treatment in determining whether a physician is a treating physician); *see also Maes v. Astrue*, 522 F.3d 1093, 1097 (10th Cir. 2008) ("when the ALJ considers an issue that is

apparent from the record, he has a duty of inquiry and factual development with respect to that issue").

The ALJ appeared to believe that she did not need to develop the record on this issue because Dr. Philip's progress notes are not part of the record. In other words, she assumed that because Dr. Philip's records were not before her, they do not exist. This was unreasonable based on the clear references in the record to the fact that Dr. Philip treated Plaintiff and handled her medication management. (Tr. 419). Indeed, counsel for Plaintiff referred to Dr. Philip as Plaintiff's doctor in the hearing. (*Id.* 76.) Given this evidence, the ALJ was required to develop the record to obtain the treatment notes rather than choosing simply to discount Dr. Philip's opinions, even though Plaintiff was represented by counsel.

This case is similar to the factual pattern confronted by the Tenth Circuit in *Maes*. In that case, as here, there was evidence that the claimant was prescribed medications for depression, but the treatment records from the physician who was prescribing the medications were not before the ALJ and he failed to request the record. *Maes*, 522 F.3d at 1097-1098. The Tenth Circuit found that even though the claimant was represented by counsel who indicated that the record was complete, the ALJ was required "to seek additional available records that may clarify the extent of the alleged disability." *Id.* at 1098 (citing 20 C.F.R. § 404.1512(e)). This case is much more compelling than *Maes* since Dr. Philip not only prescribed Ms. Gill's psychotropic medications, but also offered an opinion on her mental limitations based on a treatment relationship. It was thus unreasonable for the ALJ to assume that no treatment notes

existed, even given the attorney's representation at the administrative hearing that the record was complete.

It also appears that the ALJ rejected Dr. Philip's opinions because the questionnaire "appears to bear [his] signature . . . but, on the basis of handwriting, appears to have been filled out by Peggy Sammons, LPC (Exhibit 11F)." (Tr. 23). This also was error. The ALJ "may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation, or lay opinion. *McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002) (emphasis in original). The ALJ's "unfounded doubt" that Dr. Philip agreed with the assessment he signed was error as it was mere speculation. *Id*. At the very least, "if the ALJ believed that the matter was open to question, [s]he had an obligation under the applicable regulations to obtain additional information from Dr. [Philip] before rejecting the report outright" on that basis. *Id*.

The ALJ's failure to determine if the treating physician rule applies to Dr. Philip and to properly weigh his opinions after obtaining a complete medical record is reversible error requiring a remand of the case for further fact finding. If Dr. Philip is deemed on remand to be a treating physician, the ALJ must then apply the two-step analysis to determine whether his opinions are entitled to controlling weight or what other weight his opinion is entitled to after consideration of all of the factors in 20 C.F.R. § 404.1527(d)(2)-(6) and § 416.927(d)(2)-(6). Even if Dr. Philip is not a treating

physician, his opinions must still be properly weighed and given deference as an examining physician.

As to Ms. Sammons, the ALJ concluded that her opinions were entitled to "little if any weight". (Tr. 23.) In so finding, she stated that Ms. Sammons is not an acceptable medical source and that her "opinions are not controlling." (*Id.*) While this is true, Ms. Sammons' medical opinions still must be considered and weighed as a medical source in determining "the severity of the individual's impairment(s) and how it affects the individual's ability to function." SSR 06-03p, 2006 WL 2329939, at * 2 (2006); *see also* 20 C.F.R. §§ 404.1513(d) and 416.913(d); *Bowman v. Astrue*, 511 F.3d 1270, 1274 (10th Cir. 2008). SSR 06-03p expressly states that an opinion from a medical source who is not an acceptable medical source may outweigh the opinion of an acceptable medical source, including the medical opinion of a medical source, ""depending on the particular facts in a case, and after applying the factors for weighing opinion evidence." *Id.*, 2006 WL 2329939, at *5. This may occur, for example, in situations where the provider who is not an acceptable medical source "has seen the [claimant] more often than the treating source and has provided better supporting evidence and a better explanation for his or her opinion." *Id.* Here, there is no indication that the ALJ considered the appropriate factors in deciding how to weigh Ms. Sammons' opinions. This was error.

The other reason the ALJ gave for rejecting Ms. Sammons' opinions was that although she stated that Plaintiff has been her client since 2006, "she submitted treatment records showing visits only once in September 2008, and about monthly

between January and May 2009." (Tr. 23.)  Again, the ALJ erred by not developing the record on this issue and obtaining the missing treatment records.  *Maes*, 522 F.3d at 1097-98.

The ALJ also noted that Ms. Sammons' records usually indicated that Plaintiff's "mental status was unchanged" and that there is no indication a complete mental status examination was ever performed." (*Id.*)  She further stated, "even for the abbreviated time period these visits reflect, . . . Ms. Sammons' own treatment records [are]. . . significantly inconsistent from her letter and form evaluation." (*Id.*)  Again, the ALJ erred as to this issue.  Given her awareness of the prior treatment of Plaintiff that was not reflected in the record, the ALJ was required to develop the record on this issue.  Further, if she did not deem the record adequate to determine how Ms. Sammons' opinions were formed, she had a duty to contact Ms. Sammons for clarification of this issue instead of simply discounting her opinions.  *McGoffin*, 288 F.3d at 1252; *Carter v. Astrue*, 73 F.3d 1019, 1022 (10th Cir. 1996); *see also Daniell v. Astrue*, No. 09-2310, 2010 WL 2588174, at *4 (10th Cir. June 29, 2010) (unpublished).

The ALJ also noted that the checklist filled out by Dr. Philip and Ms. Sammons that indicates Plaintiff "is impaired in every area of mental functioning", is inconsistent with Plaintiff's activities of daily living.  (Tr. 23.)  Specifically, the ALJ found that their opinion that Plaintiff had marked limitations in performing activities within a schedule, maintaining regular attendance, and being punctual within normal limitations is inconsistent with the fact that Plaintiff is her granddaughter's primary caretaker and is capable of getting her off to school in a timely manner every day.  (*Id., see also* 363-64.)

I find that the ALJ's rejection of the mental health providers' opinions on this basis was error, as the ALJ improperly substituted her lay judgment as to how she thought Plaintiff's daily activities should translate into mental impairments. *McGoffin*, 288 F.3d at 1252 ("Although the court "may not second-guess an ALJ's credibility judgments, such judgment by themselves 'do not carry the day and override the medical opinion of a treating physician that is supported by the record.'") (quotation omitted); *Winfrey v. Chater*, 92 F.3d 1017, 1021-22 (10th Cir. 1996) (an ALJ is not entitled to reject a doctor's opinions without adequate justification or to substitute his own medical judgment for that of mental health professionals).

Finally, the ALJ stated that the ultimate conclusion as to disability is reserved to the Commissioner. (Tr. 23.) It is unclear whether she rejected any of the opinions of Dr. Philip and Ms. Sammons on this basis. (Tr. 360, 419.) I note that most of the medical opinions rendered by Dr. Philip and Ms. Sammons did not directly address disability but opined about how Plaintiff's impairments would impact her ability to work. These were medical findings by the mental health providers that had to be properly weighed by the Commissioner, and could not be rejected on the basis that they were on an issue reserved to the Commissioner. *See Krauser*, 638 F.3d at 1332 ("[T]he medical findings as to work-related limitations would, if accepted, impact the ALJ's determination of RFC—they always do, because that is what they are for—but that does not make the medical findings an impermissible opinion on RFC itself").

Dr. Philip also, however, completed Colorado Department of Human Services Med-9 Forms that checked the answer "yes" to the box asking whether Plaintiff "has

been or will be totally and permanently disabled to the extent [she is] unable to work at any job due to a physical or mental impairment." (Tr. 438, 440.)  Even though this does express an opinion as to the ultimate issue of disability, the ALJ erred to the extent she rejected them on that basis.  The Tenth Circuit recently held that a medical provider's opinion that a person is disabled "reflects judgments about the severity of Plaintiff's impairments, about the prognosis for his condition, and about what Plaintiff can still do despite his impairments."  *Fuller v. Astrue*, No. 10-2037-JWL, 2011 WL 209527, at *11 (10th Cir. Jan. 21, 2011) (unpublished).  Thus, a psychiatrist's opinion regarding disability "is, by definition, a medical opinion."  *Id.*  "[S]uch an opinion may not be disregarded, and 'the adjudicator must evaluate all the evidence in the case record to determine the extent to which the opinion is supported by the record.'"  *Id.* at *10 (quotation omitted).  It "must be weighed just as are all medical opinions."  *Id.* at *11.  An ALJ errs when he or she does not follow this standard.  *Id.* at *10-11.

In conclusion as to Dr. Philip and Ms. Sammons, the record is clear that they treated Ms. Gill on a regular basis; provided medical findings to support their findings, and they are specialists in mental illness.  Their opinions are also supported, at least in part, by other evidence in the record.  Dr. Austin completed a psychological evaluation in November 2007, wherein he concluded:

> It appears the depression evolved so Lisa could not show up for work or have enough energy to perform work functions either in housekeeping or at a restaurant.  It would appear that with a continuation of treatment that she could start working part-time.

(Tr. 359.) This finding certainly supports the opinions of Dr. Philip and Ms. Sammons that Plaintiff cannot work full time, even though Dr. Austin did only diagnose mild depression.[1] To the extent the ALJ rejected this opinion of Dr. Austin as "an area reserved to the Commissioner" (Tr. 25), this was also error as discussed previously.[2]

Instead of giving any weight to the opinions of Dr. Philip or Ms. Sammons, the ALJ chose to give "great weight" to the opinions from non-examining psychologist, Dr. Houston, who testified at the hearing. (Tr. 24.) Since I am remanding this case to the Commissioner for the proper weighing of the medical evidence, this may obviously impact the ALJ's decision to rely on Dr. Houston. Nonetheless, I note several things for the ALJ to keep in mind as to both Dr. Houston and Dr. Glasco, the state agency consultant who reviewed the record and whose opinion the ALJ gave "moderate weight" to. (Tr. 25.) First, the Tenth Circuit has made clear that the opinion of an agency physician who has never examined the claimant is generally entitled to the least weight of all medical sources. *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004).

---

[1] I reject the Commissioner's argument that Dr. Austin's conclusions are premised on Plaintiff's subjective reports. First, the ALJ did not make that finding, and "[t]he ALJ's decision must be evaluated "based solely on the reasons given stated in the decision." *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004). Second, this is not a proper basis for the ALJ to reject Dr. Austin's opinion. "The practice of psychology is necessarily dependent, at least in part, on a patient's subjective statements". *Thomas v. Barnhart*, No. 04-7191, 2005 WL 2114163, at *4 (10th Cir. Sept. 2, 2005) (unpublished). The ALJ cannot reject a medical opinion solely for the reason that it was based on a claimant's responses because such rejection impermissibly substitutes her judgment for that of the doctor. *Id.*

[2] I note that the Commissioner also cites to Dr. Berkley's assignment of an activities of daily living (ADL)/ occupational GAF score of 62, indicating only some difficulty in occupational or school functioning. (Tr. 24, 316). The ALJ explicitly stated, however, that she was not relying on that score. (*Id.* 24.) She also stated that GAF scores are given "less weight than more persuasive evidence." (*Id.*) So again, this is not a proper argument for the Court to consider.

Second and importantly, if the ALJ relies heavily on opinions of an agency medical consultant that did not examine the claimant, those "opinions must themselves find adequate support in the medical evidence". *Lee v. Barnhart*, No. 03-7025, 2004 WL 2810224, at * 3 (10th Cir. Dec. 8, 2004) (unpublished). In this case, while Dr. Houston testified that his opinion conflicted with Dr. Philip's opinions in Exhibits 10F and 11F (Tr. 76), he did not state what medical evidence he actually relied on to support his opinion.[3] The same appears to be true as to Dr. Glasco. (*Id.* 281-87.) Thus, it is unclear how the ALJ could rely on their opinions for the RFC or, indeed, how the ALJ actually derived her RFC finding. This also is error that must be addressed on remand. *Lawton v. Barnhart*, No. 04-1050, 2005 WL 281378, at *10 (10th Cir. Feb. 7, 2005) (describing the RFC assessment which "must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence" as well as a "function-by-function" evaluation).[4]

        2.      <u>Whether the ALJ Erred in Assessing Plaintiff's Credibility</u>

I also find errors with the credibility analysis. The ALJ found that Plaintiff is not credible to the extent her statements about symptoms are inconsistent with the RFC because she is able to get up in the morning and get her granddaughter off to school

---

[3] I also note that it is unclear from the record as to whether the testimony about the severity of Plaintiff's mental limitations actually came from Dr. Houston. (*See* Tr. 65-67.) However, I will accept the ALJ's representation that he testified as to such limitations as true for purposes of this decision.

[4] I also note that Dr. Houston appeared to mistakenly believe that the letter from Dr. Philip and Ms. Sammons was not reliable medical evidence (*id.* 77), when in fact it reflected medical findings made by them.

and care for her, she sometimes goes to the park, and she is able to cook simple meals, wash dishes, do laundry, and vacuum. (Tr. 21, 24.) She also found that Plaintiff's treatment was not always consistent and that she was found to be improved in the period December 2006 through February 2007. (*Id.* 21-22.) I find errors with this analysis as well.

First, the fact that Plaintiff is able to do simple daily activities and take care of her granddaughter are not necessarily inconsistent with Plaintiff's complaints of depression. In *Bauer v. Astrue*, 532 F.3d 606, 608-609 (7th Cir. 2008), the court found that the fact that the plaintiff who suffered from mental impairments could dress appropriately, shop for food, prepare meals, perform chores, take care of hygiene, and care for a 13 year old son only means that "the plaintiff is not a raving maniac who needs to be locked up" and did not contradict the opinions of work-related impairments from the treating mental health professionals.

Further, the ALJ ignored the evidence that Plaintiff testified that her granddaughter did not require much supervision. While she helped her granddaughter get ready for school in the morning, Plaintiff testified that her granddaughter goes to an afterschool program where she stays until after dinner and then comes home at 7:00 and gets herself ready for bed. (Tr. 50). The Tenth Circuit has pointed out that limited daily activities do not establish an ability to work in a job environment on a sustained basis. *See Gossett v. Bowen*, 862 F.2d 802, 807 (10th Cir. 1988) (citing *Talbot v. Heckler*, 814 F.2d 1456, 1462 (10th Cir. 1987) and *Broadbent v. Harris*, 698 F.2d 407,

413 (10th Cir. 1983)).  This must be reassessed on remand after consideration of all the evidence.

Further, I agree with Plaintiff that the fact she improved briefly between December 2006 and February 2007 says little about Plaintiff's condition over a longitudinal period of time.  *See Ahangari v. Astrue*, No. 07-cv-01869-REB, 2008 WL 4183492 *4 (D. Colo. 2008) (ALJ's focus on a single instance of stability ignores the longitudinal record showing that claimant has a mental impairment that waxes and wanes over time).  In this case, the evidence in late 2007 from Dr. Philip and Ms Sammons as well as other evidence in the record shows that Plaintiff still had very serious mental impairments.  (Tr. 419, 421-28, 442-46.)  Indeed, Dr. Austin noted a record from August 2007 showing "clinical regression with an increase in depressive feelings. . . . ."  (*Id.* 357.)  It appears that the ALJ improperly selectively applied the evidence on this issue.  *See Carpenter v. Astrue*, 537 F.3d 1264, 1265 (10th Cir. 2008) (the ALJ may not "'pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence'") (quotation omitted).

Finally, the ALJ erred by focusing on records showing Plaintiff's lack of consistent treatment.  As detailed above, the record is not complete.  When the record is developed it may well show more regular treatment.  The ALJ should also consider the fact that courts have criticized decisions to fault a mentally impaired claimant for failing to seek regular treatment.  *See Pate-Fires v. Astrue*, 564 F.3d 935, 945-6 (8th Cir. 2009) (citing numerous cases for the proposition that "courts have recognized a mentally ill person's noncompliance…can be, and usually is, the 'result of [the] mental

impairment [itself] and, therefore, neither willful nor without a justifiable excuse'"); *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996).

Based on the foregoing, I find that the ALJ's credibility determination is not supported by substantial evidence. On remand the ALJ must reassess Plaintiff's credibility taking into account all of the evidence and relevant factors.

### 3. Whether the ALJ Erred in Connection with the Vocational Expert Testimony

Finally, Plaintiff argues that the RFC found by the ALJ is not supported by substantial evidence and does not encompass all of her mental limitations. I previously noted in Section II.B.1, *supra*, an error in the RFC that needed to be addressed on remand. I further note generally that the RFC will need to be reassessed on remand after the ALJ has properly weighed the medical evidence.

### III. CONCLUSION

Based upon the foregoing, I find that the ALJ did not properly weigh the medical evidence and that errors were made in the credibility assessment. Accordingly, it is

ORDERED that this case is **REVERSED AND REMANDED** to the Commissioner for further fact finding as directed in this Order pursuant to sentence four in 42 U.S.C. § 405(g).

Dated September 24, 2012

                                 BY THE COURT:

                                 s/ Wiley Y. Daniel
                                 Wiley Y. Daniel
                                 Chief United States District Judge